The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its Honorable Court. Thank you. Good morning. Be seated. The first case this morning is number 06-1012, Ipventure v. Prostar Computer. Mr. Bernholz. May it please the Court, good morning, Your Honors. Richard Bernholz, the plaintiff, appellant, Ipventure. The key issue presented on this appeal is whether the plaintiff, Ipventure, had standing to sue as the sole holder of legal title to the 235 patent. The Court's decision in Arachnid and Film Tech and the cases applying it establish and confirm that Ipventure is the sole holder of legal title to the patent withstanding to sue. The resolution of this ownership issue disposes and resolves all issues on the appeal. In March of 2003, before the suit was filed, both inventors, Douglas Thomas and his father, Alan Thomas, assigned the patents in writing to Ipventure. Defendants in the District Court and on appeal concede that Ipventure is the successor in title to the 235 patent, at least via the interest from inventor Alan Thomas. Were there any documents filed on behalf of the past employer or whatever else to clarify the issue that we're arguing about? There are three documents in question with the interest of Hewlett-Packard, Douglas Thomas' former employer, which defendants argue was a holder of legal title, which was the basis for the District Court's ruling dismissing the case for lack of standing. There's the 1992 employment agreement, which the defendants... I understand that that's what's causing the problem, but did Hewlett-Packard file something? Were they asked to file something which they say we understand that we have no interest in, no right to this invention? So there are two documents that are of record, an agreement in 2003 between Ipventure and Hewlett-Packard. I have the same question, Judge Newman, just to make sure that we're all on the same page here. Hewlett-Packard did not enter an appearance or otherwise file a document on its own as a participant in this lawsuit. Everything, as I understand it, correct? Everything that is being said about Hewlett-Packard is vis-à-vis a document that was in a contract with a third party, in this case, Mule. Yes, Hewlett-Packard... So Hewlett-Packard, we're in a somewhat awkward position about speculating about Hewlett-Packard's interest in this case, based not on something that Hewlett-Packard has said to the court, but rather things that Hewlett-Packard has said to you. No, Your Honor, there are two documents. There are contracts from Hewlett-Packard that were submitted in the District Court in the 2003 contract between Ipventure and Hewlett-Packard. There's no dispute as to its authenticity. No, I understand, but it's a contract. It's not a representation made by Hewlett-Packard in court. That's correct, Your Honor. Well, but whether they've made a representation in court, I still am interested in knowing the status between Hewlett-Packard and an ex-employee. Was there ever some kind of follow-on document with respect to this particular invention, when it was made, and how it might have fit into the employment contract? So the only documentation from Hewlett-Packard are two written representations that Ipventure is the owner and sole owner of the 235 patent. In 2003, before the lawsuit was filed, Hewlett-Packard confirmed in writing that it was, in fact, that Ipventure was the sole owner of the 235 patent. In response to defendants' ownership allegation in 2005, which created a conflict of interest for Ipventure Plaintiffs' Counsel, that dispute was resolved in a further agreement in 2005, where Hewlett-Packard again represented that Ipventure was the sole S&E and released any claims related to the enforcement of the 235 patent. That 2005 agreement, which is a disclaimer of any interest in the patent, was expressly not considered by the district court. There are no other documents that were filed, but at every turn, Hewlett-Packard has disclaimed an interest in the patent and has never asserted ownership. And why was it not considered? The district court, in its order dated July 27, expressly refused to consider the 2005 agreement simply because it postdated the complaint, relying solely on decisions relating to constitutional standing, which say that constitutional standing defects can't be cured with respect to events that postdate the complaint. Constitutional standing, in this case, was never a dispute, and the district court should have considered it. Did you raise that specific point with the district court, the distinction between constitutional and prudential standing, and arguing that at least one of your two… I understand your principal argument is that Hewlett-Packard was never in the picture because there was never actually an assignment. But your secondary argument in your brief, of course, now is that even if they were, then the most they had was part ownership at some point, and that you had part ownership through one of your two inventors, and that as such you had constitutional standing, and therefore this becomes a Rule 19 question, not a dismissal for lack of constitutional standing question. Did you raise that argument for the district court? Absolutely, Your Honor. The issue was very crisply framed, and constitutional standing was never a dispute. The fact that IP Venture is a patentee, at least as a co-owner, was never in dispute. The issue solely that arose below was the assignment issue that the 1992 employment agreement between Douglas Thomas and Hewlett-Packard as a matter of law constituted an assignment of legal title. We believe that is wrong under the governing cases under ERACTED and Film Tech and all the cases that apply that standard as to who has legal title. In all those cases there is an active conveyance, and when you look at all those cases, they all line up that when there is a grant, a conveyance, an assignment, when that language is present, then the document is found to be an assignment, and when it's missing, it is not found to be an assignment. Except for Film Tech. In Film Tech, that language was expressly present, Your Honor. The contract said that the inventor agrees to grant and does hereby grant the rights to the full right, title, and interest. Well, the statute said it shall vest. And the statute is a further reason why there was an express conveyance, that the statute, the FNERDA, said the title shall vest in the government. So there were both contractual basis for an assignment and a statutory basis. In terms of Your Honor's question as to the constitutional versus credential standing, so constitutional standing was never in dispute. When you say it was never in dispute, you specifically raised it, you said, Your Honor, you can't throw us out because we at least have constitutional standing? Yes, Your Honor. You made that argument. Absolutely, and that's conceded on appeal in the defendant's briefs. And in terms of the Rule 19 credential standing issue, first, the court never gets to that issue because HP never had legal title and is not a co-owner of the patent in the first place. Second, if you assume that they are a co-owner, we believe that's wrong as a matter of law. If you assume that they're a co-owner, then the proper question is, joined her under Rule 19, whether an absent party should be joined, particularly a party whose disclaimed an interest. Now, the district court applied a per se rule dismissing the case under Ethicon. Now, Ethicon, when you read the case, doesn't announce a per se rule if the district court's application of Ethicon as a per se rule cannot stand because in circumstances when you have an absent co-owner, assuming they're a co-owner, and I believe that's incorrect, you need to consider the circumstances, the present circumstances. And district court cases who have been confronted with that exact circumstance have held that the absent party whose disclaimed an interest is not a necessary party and need not be joined. And here, Hewlett-Packard not only didn't have legal title, they've never expressed an interest, a legally protectable interest that would get them in the door as being a necessary party in the first instance. So they fail under the basic threshold test in the Altman case, as an example, for a necessary party. I see them into my rebuttal time. Well, the expression of interest is subordinate to the actual issue of transfer or not. If you've transferred it, then the expression of interest is irrelevant. If you haven't transferred it, then the expression of interest doesn't carry the day. No, not quite, Your Honor, because to decide whether the absent party is a necessary party, rule 19 provides a framework. And the question of joiner should be analyzed under rule 19. Well, was there any proposal under rule 19 to the district court whether that would be accepted? Your Honor, I see them into my rebuttal time. You are. Thank you. At oral argument, the district court asked if there was any, if she could join Hewlett-Packard. And the question was squarely presented to her that, yes, you could if you believe that they were a necessary party. Now, none of that analysis ever took place because the district court applied a per se rule. Well, but you're speaking as if it was up to the district court spontaneously to enter such a joiner, that there was no motion, no request, no? Well, our position was that Hewlett-Packard had no interest in the case, was not a co-owner, and therefore you don't even reach the joiner question. So it wouldn't make sense for us to bring a motion to join Hewlett-Packard given the judge's legal ruling, which was incorrect based on ERACTA and the Film Tech line of cases. Okay. Thank you, Mr. Bernholz. Thank you, Your Honors. Mr. Feinberg. May it please the Court. I'm Ian Feinberg for the defendant, Apolise Prostar, and minor. There are three issues before this Court, and we've addressed two of them already. The first question is whether the Thomas Employment Agreement assigned Doug Thomas' interest in the 235 Act to Hewlett-Packard. The second issue is whether the Court was obligated somehow, if that were true, to make a sua sponte Rule 19 analysis as to whether HP needed to be added to the case. Because there was, in fact, no motion, as this Court has pointed out. And the third issue— Well, but I take it that the issue of constitutional versus prudential standing was raised. It was, Your Honor. In other words, they said the contention was made that you can't dismiss the case without considering the 2005 agreement, for example, because we have constitutional standing. And therefore, the issue becomes a Rule 19 issue, whether Hewlett-Packard—ultimately, whether the disposition of that issue is that Hewlett-Packard gets joined or not. Correct? It got sort of raised at oral argument. It was never briefed. And the issue came up as to whether or not the Court could perform a Rule 19 analysis. The Court was never asked to perform a Rule 19 analysis below, and the Court didn't. The fundamental question that the Court reached was—and before I go there, Your Honor, the third issue is assuming the case is affirmed on the merits, which Mr.—which I can venture is certainly right. If the case is reversed, the issue of prevailing party does go away. But if the case is affirmed, then the question is whether a defendant who obtains a dismissal without prejudice and thereby, at least for a time, disposing of the case, and at least barring three years of damages, can be a prevailing party. The District Court held that this precedent barred it. This Court's precedent barred it as a matter of law. The first thing I wanted to address is plaintiff's argument on Iraq. Plaintiff spent the first 13 pages of its brief talking about Iraq, and it spent its entire argument on ownership talking about Iraq. But this Court has held that ownership is a matter of state law, not federal law. Regents v. Knight is clear. Supreme Court precedent is clear. Ownership of a patent isn't a question of federal law. It's a question of state law in the ordinary case. If there's a federal statute, it might be different. We understand that, but your position is not that title passed automatically, is it? Our position is that title passed automatically by virtue of the employment agreement between Mr. Thomas and his employer, Hewlett Packard. That agreement says, Your Honor, such proprietary developments are the sole property of HP. But we still have the issue of whether or not this is one of such proprietary developments. We do not. It was conceded by IP Venture in the District Court. We believe it was conceded so it would not expose Douglas Thomas, a patent attorney and a member of the bar, a registered patent attorney, to cross-examination. What does the agreement say after it says the sole property of HP? It then has a series of clauses, as the District Court held, to affect any needed paperwork to make the assignment effective. Merely paperwork? Yes. Rather than an operative act. I agree to assign him to HP. In other words, they hadn't been assigned until that act occurred. Your Honor, to read it that way, which is what IP Venture proposes to read, is inconsistent with California law. There has never been a California case which has held that any agreement that doesn't contain some kind of condition proceeding, like Shaw, isn't a present assignment of all rights. Well, what has California law held? California law has held, in grove and true— Is sufficient? It has. And, Your Honor, not only shall be, this is are. This is such property developments are the sole property of HP. The only way to read this agreement as something other than a present assignment is to put a word that is not in that sentence into it. And that word, of course, is not. If you say such property developments are not the sole property of HP, then perhaps there isn't a present assignment. But unless you add the word not to that sentence, you render that sentence nubitory. That is inconsistent with California law. Is it clear that California law applies? Because we have federal statutory provisions relating to the assignment of patents, right? Those statutes, Your Honor, are court instances. They are designed to give notice to someone who purchases for value without notice of a prior assignment. They are not—there's been no case that I'm aware of that has held that assignment of inventions are otherwise a matter of federal law. Was Arachnid based on state law? Your Honor, we don't know what Arachnid is based on. It doesn't tell us what agreement, what law applies. Presumably, if it was state law, it wouldn't be California. There's no California contact in Arachnid. It's either Illinois or Wisconsin law. But the district court did not tell us, and the federal circuit did not tell us what law applies. In other words, it sort of sounded like it was federal law? It sounded like the issue wasn't raised, Your Honor. Nobody raised the issue. It wasn't addressed. In other words, under the various possibilities, there wasn't a difference in the law. Well, we don't know that, Your Honor, because nobody raised the issue of what the applicable law was. Here it is clear that California law, there is a difference. The district court held correctly that in California, you have to interpret an agreement, all the words in the agreement, to give them effect. By the way, that's law to this circuit as well. And the only way that the district court held to interpret this agreement consistently was to say there was a present assignment. I should note, Your Honor, that like most states, California also requires its contracts to be interpreted reasonably. This is the standard assignment agreement. The evidence of record is this is the standard Hewlett-Packard employment agreement. Hundreds of thousands of people have signed this agreement, people who invent as part of their work. And presumably the creation of inventions is followed up by an assignment. It may well be so that the paper will—so HP doesn't have to go through the process. It's almost a matter of judicial notice in most well-run corporations, isn't it? But the only thing that this agreement assigns are proprietary developments, which IP Venture concedes the 235 patent is one. So if IP Venture is right, members of the court, then the standard HP employment agreement doesn't actually assign anything to HP invented by anyone. And I would argue that is an unreasonable interpretation of the agreement. Assuming that it's at least arguable, it's not more likely than not that HP has an interest, had an interest in this invention at the time it was made. If you have such an interest, you could certainly disclaim it, transfer it. You could transfer it, Your Honor, but they never purport to do that. The 2003 agreement, which— Well, they can disclaim it. You're saying it can't be disclaimed? It can be disclaimed, which is in the nature of a quitclaim deed. It has to be in the nature of a quitclaim, Your Honor, because if they license the patent, which HP did under ACP I, if you license the patent before you disclaimed it, you can't jump—you can't go back to the future, in the words of this Court. You can't eviscerate licenses you granted before you disclaimed. Well, but that has to do with the downstream effect. I mean, one of the problems that I'm having with this case is that everybody's really got at least one eye, maybe two, on that licensing issue. And we're having—the train is being driven, I think, on this so-called standing issue by focus on that. But if you divorce the licensing issue for a moment from the question of whether HP is in the case or not, since it's HP's position that they never did have an interest, then they presumably, in any document in which they are expressing their lack of interest, they wouldn't transfer an interest that they don't think they have. But they could disclaim it. They could say, to the extent that anybody thinks that we have an interest, it's not so. That's what, as I read it, the 2005 agreement, at least arguably, seems to say. And if that's true, and if there is constitutional standing on the part of IP, IP Venture, why isn't the right way for the district court to have looked at this case is to say, IP Venture is a valid plaintiff in this case, subject to the question of whether it needs to join HP. Let's look at all the materials, including the 2005 agreement, to decide whether HP does have to be joined. Why isn't that the correct procedure, which wasn't followed, as I understand it, in this case? That wasn't followed, Your Honor. The court was sort of tangentially invited to do that in an oral argument. And it wasn't followed because the district court correctly said, you've got to have standing at the start of the case. But you have to have constitutional standing, as I understand the rules. And tell me if I'm misunderstanding them. Once you have that, then the question of whether you join somebody else is a question for Rule 19. So that, since it appears to be undisputed that at least one of the inventors is not subject to whatever the arrangement the other made with HP, that IP does have at least standing as a co-owner of this patent, correct? It has standing with its other co-owner. However, this court has never allowed jurisprudential standing, and that is what we're talking about, not constitutional, to be fixed two years after the fact. Well, you've added a third category. We always talk about it in terms of constitutional or prudential. And you say jurisprudential. Prudential. Prudential, you're saying. OK. There's never been a case where this court has allowed somebody to retroactively, two years after the case began, fix prudential standing by bringing somebody in new. I point out to you, Your Honor, and then I want to at least briefly address the cross-appeal, that if the court had done a Rule 19 analysis, they would have discovered, in fact, that there was a missing party, all right, and that would have been Doug Thomas. Even if the 2005 agreement was effective to disclaim HP's agreement as of that date, who would have gotten it? Not IP Venture, but Doug Thomas, because that was the other party to the employment agreement. IP Venture wasn't a party. But isn't all this material to be sorted out in the Rule 19 inquiry, which then could be resolved by having Doug Thomas do whatever he needed to do? That's what I'm, I mean, we've had several cases in which somebody had constitutional but not prudential standing at the outset, and it was fixable. I'm aware of no case in which this court has actually allowed somebody to come back two years later and fix prudential standing by adding a plaintiff as a co-patent. I mean, there are reasons for that. Well, perhaps it hasn't come up in exactly the terms that you're stating, such as a two-year gap. But Rule 19 and the rules in general are designed to enable and facilitate, not to bar fixable issues. But the problem, Your Honor, is if that were true, in that two-year interim, HP could have, for example, licensed a patent if, in fact, the district court was right that it owned it. And so what we'd have, the reason we have all of the patent owners present, the justification for that rule, is so that all of the issues can be addressed from the outset. So there can't be intervening licensing issues, so that all of the issues can be resolved, and they can only be resolved if all of the owners are joined from the start. I'm into rebuttal, but I do want to raise an issue on our cross-appeal. Assuming the case is affirmed, the district court held that as a matter of this circuit's law, a party who obtains a dismissal without prejudice can never be a prevailing party. HR Technologies clearly, at least implicitly, holds to the contrary, since it affirmed a dismissal with prejudice for lack of prudential standing, and yet sent the case back for determination whether the prevailing defendant on a dismissal without prejudice could be a prevailing party under Section 285. And here is a classic example. At a minimum, defendants have obtained the following two kinds of relief, which permanently change the relationship between the parties. First, IP Venture can never bring a lawsuit against defendants without obtaining HP's interest in the patent, somehow. Second, three years of damages are gone. The statute of limitations are gone, have rolled up, so three years of damages, that is more than six years before the filing of the next complaint, are forever barred. So, in fact, there has been a fundamental change in the relationship of the parties, and the case should be remanded to the district court solely on the question of whether or not defendants are prevailing parties. And I would like to reserve my remaining seconds. Okay. Mr. Feinberg? Mr. Bernholz? Thank you, Your Honor. I'd just like to address a few points. The critical threshold issue is whether HP, as of the 1992 agreement, had legal title, and whether legal title passed pursuant to that 1992 employment agreement. The operative language in that agreement is, agree to assign. All the cases confirm that that does not transfer legal title, and that is dispositive of the appeal in our view. The California cases that Mr. Feinberg alludes to, that none of those cases address the federal question of whether legal title is passed for purposes of standing. And, in fact, a close inspection of those cases shows that legal title does not transfer in an agreement of this sort. The Grove case, the California court ordered an assignment after holding that the inventions belonged to the company. They hadn't already been assigned. It ordered an assignment, and it ordered an assignment subject to a payment of expenses, something that hasn't happened here. HP hasn't paid a dime for the work that went into these patents. Does California law apply? California law on contract interpretation will, of course, apply to those basic contract interpretation principles, but the law is not unique in any respect on this point. And the question here is constitutional and prudential standing. As for whether prudential standing can be fixed, there absolutely are cases where circumstances arise later after the complaint where that defect is fixed. The Abbott case, the Mentor case, cases where the defect was addressed on appeal. The Schreiber case where there was a gap in standing and then the plaintiff reacquired rights. So the issue is absolutely fixable, a point I think that Your Honor made. In terms of the fee question that Mr. Feinberg raised, the defendant's citation to the HR Technologies case, that case does not support the position that defendants have announced. That case involved a dismissal of defendants' counterclaims that were asserted that included a prayer for relief that asked for a declaration of an exceptional case. And this Court on Appeal held that those counterclaims should not have been dismissed in the unusual facts of that case. In this case, there are no counterclaims. It's simply a motion for attorney's fees after a dismissal without prejudice for lack of jurisdiction. So the HR Technologies case has no bearing on this case. And the district court was correct in holding that there was no prevailing party. There was no relief on the merits of the patent claims have never been litigated. So in sum, the Rule 19 issue, the court need not reach that issue because of the ownership question, which disposes of all issues on the appeal and the dismissal without prejudice should be reversed. But if we do reach, I can see again, I think if I read between the lines correctly, I can see why the parties are focused on this, ultimately the ownership issue at the outset, because it may have implications for this licensing question that goes to the substance of the case. But for purposes of just standing, we don't really need to reach the question, do we, of whether HP actually did obtain ownership in light of the Rule 19 question. It's an excellent question, Your Honor, and the court absolutely has to reach the ownership question because you don't reach Rule 19 at all until you decide that there's an absent co-owner. If HP is not a co-owner, Rule 19 has no bearing because IP Venture is the sole holder of the title. Yeah, but isn't that the question? Look at it this way. You have no doubt that you have constitutional standing by virtue of one of your two owners at least. Correct. You think you've got both, but one at least. Okay. So the court looks at this and says, okay, I know that you've got constitutional standing, and therefore let's see if we need to get to the question of whether HP at any point back when, at least for purposes of deciding standing, whether HP was an owner or not. Why can't the court simply say, I don't have to address that question because I've looked at the 2005 document, and I think whatever HP may or may not have had, they gave up, and therefore you now have both constitutional and now, thanks to the 2005 document, complete prudential standing. You're in charge. Go forward. As I understand it, what you don't like about that is it doesn't then solve the problem of whether HP had ownership back when licenses were being given, and therefore you may have a license problem with respect to your defendant in this suit, but I don't see why it gets in the way of the court answering the question of standing. Therefore, to come back to the original point, why that's a necessary question to be resolved for purposes of the question that's before us right now, as opposed to for the licensing. The questions clearly are intertwined as to IP Venture standing today, as I stand here before you, and there also is the same question as to IP Venture standing on the date the complaint was filed. And the ownership question has been ruled on by the district court as a matter of law. That does have consequences in terms of defenses or claims that the defendants may raise, and that is the threshold question in terms of getting to the Rule 19 analysis. And if the court does not reach it, it's a very different lawsuit that flows from the nature of this legal ruling, which is erroneous as a matter of law. So it is critical that the court reach that threshold ownership question, because once you decide that there are or are not co-owners, all further questions flow from that principle. Okay. Any more questions for Mr. Bernholz? Thank you, Mr. Bernholz. Thank you very much, Your Honor. Mr. Feinberg, do you have some time on the cross-appeal? Your Honor, there is no question that, assuming this case is affirmed, that defendants obtain substantial relief. And HR Technologies is right on point, because there is no question that the district court had jurisdiction over the underlying case. It's a patent case. Of course it had jurisdiction. Are you responding to something that Pelland stated? I'm responding to his argument on HR Technologies. On the cross-appeal. On the cross-appeal. So on HR Technologies— On prevailing party. Yes. Okay. I believe that's what I'm limited to responding to. Right. So there's no question that in HR Technologies the case was remanded by this court, including on the Section 285 attorney's fees clause, which would have been unnecessary, in fact a useless act, if the defendant who had obtained a dismissal without prejudice could never be a prevailing party. We simply say it could be a prevailing party. Not necessarily, but could be. And that the district court should consider the question of whether defendants are, in fact, a prevailing party. Okay. Thank you, Mr. Feinberg and Mr. Greenhouse. The case is taken into submission.